IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:

    SUSAN KAY QUIGLEY,

        Appellee/Debtor,        Civil Action No. 5:08CV126
                                                            (BK No. 08-24)
HELEN M. MORRIS,

        Appellant,

DOUGLAS KILMER,

        Trustee.

**MEMORANDUM OPINION AND ORDER**
**AFFIRMING ORDER AND MEMORANDUM OPINION**
**OF THE BANKRUPTCY COURT**

I.  Background

On January 11, 2008, appellee/debtor, Susan Kay Quigley, filed her petition and schedules for relief under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of West Virginia. Her initial filing included a Chapter 13 plan which required her to make bi-weekly payments to the Chapter 13 trustee of $122.77 over sixty months. This plan proposed to distribute $7,992.00 to her unsecured creditors over that time, which would pay about twenty-six percent of their filed claims.

The debtor earns income above the median income level for her state of residence. On Schedule B, which identifies her personal property, the debtor lists two all terrain vehicles ("ATVs"). On Schedule D, the schedule of her secured debts, the debtor states that both of these ATVs are security for notes secured by her. She

further states in her proposed Chapter 13 plan that she will surrender both ATVs to the secured creditors.

Also on Schedule B, the debtor lists a 2004 Ford truck as her personal property. Below this listing is a notation that the Ford truck belongs to an ex-boyfriend. Although the debtor is listed on the vehicle's certificate of title as a legal owner, the ex-boyfriend makes the payments on the vehicle, is a co-debtor on the note, and is in possession of the truck.

In her Chapter 13 statement of current monthly income, calculation of commitment period, and calculation of disposable income (Form B22C), the debtor includes the debt payments owed on the two ATVs, as well as the 2004 Ford Truck. According to the Form, over each of the sixty months in her Chapter 13 plan, the debtor owes $40.87 on one ATV, $122.146 on the other, and $307.83 on the Ford truck. With these deductions, and based on the debtor's calculations, she has no disposable income (negative $48.08) to pay to unsecured creditors in a Chapter 13 plan. If deductions for the ATVs and the Ford truck were disallowed then Form B22C would require the debtor to pay her unsecured creditors $423.08 per month over the sixty months of her Chapter 13 plan.

The trustee objected to the plan because not all disposable income was being devoted to the plan. Specifically, the trustee objected to the debtor's inclusion of the secured debt payments regarding the two ATVs and the Ford truck. United States Bankruptcy Judge Patrick M. Flatley entered an order and memorandum

opinion overruling the trustee's objections and finding that the debtor could take as deductions the two ATVs and the Ford truck. Nevertheless, Judge Flatley held that the debtor must amend her Form B22C to increase her calculation of her current monthly income to account for the benefits received by the debtor of having her ex-boyfriend make her contractually due secured debt payments on the Ford truck.

The trustee filed a notice of appeal from the bankruptcy court. The trustee submitted its opening brief to this Court to which the debtor responded, and the trustee replied. The United States Trustee and eCast Settlement Corporation, assignee of FIA Card Services a/k/a Bank of America, both filed individual briefs of amicus curiae on behalf of the debtor. This Court has now considered all of the matters before it and is of the opinion that the order of the bankruptcy court should be affirmed in its entirety.

## II. Jurisdiction and Standard of Review

This Court has jurisdiction over this bankruptcy appeal pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8002. This Court reviews the bankruptcy court's conclusions of law under a de novo standard of review. See In re NVR, 189 F.3d 442, 448 (4th Cir. 1999).

## III. Discussion

Form B22C implements the disposable income test of 11 U.S.C. § 1325(b) for Chapter 13 debtors. The purpose of this test is to

determine how much the debtor will be required to pay to her unsecured creditors "to obtain confirmation of a Chapter 13 plan when a party objects that the debtor is not committing all the debtor's disposable income to the plan for the repayment of the debtor's pre-petition, unsecured debts." (Mem. Op., BK No. 08-24 at 2, June 20, 2008). Form B22C allows certain deductions from the debtor's income for existing secured debt expenses.

The trustee and amici curiae all argue that the bankruptcy court erred by overruling the trustee's objection to confirming the debtor's Chapter 13 plan. Particularly, they argue that the debtor cannot claim a secured debt payment deduction on Form B22C for (1) collateral that the debtor intends to surrender, here, the two ATVs; and (2) secured collateral that the debtor does not use and does not make the monthly debt payments on, here, the Ford truck.

These issues on appeal are identical to those issues raised before the bankruptcy court. In addressing such issues, the bankruptcy court decided that it must (1) examine the applicable rules in the context of a Chapter 7 case;[1] (2) determine whether those rules should be different in the context of this Chapter 13 case; and (3) consider whether the court has reached an absurd conclusion.

---

[1]As noted by the bankruptcy court, § 1325(b)(3) directs that when an above the median income Chapter 13 debtor is calculating the amount of disposable income that she must commit to the repayment of the debtor's unsecured creditors, the debtor's allowed expense deductions must "be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)," applicable in Chapter 7 bankruptcy cases.

4

Thus, the bankruptcy court began its analysis by ascertaining what expense deductions a debtor is allowed regarding the debtor's secured debt obligations. The relevant statute provides,

> (iii) The debtor's average payments on account of secured debts shall be calculated as the sum of--
>
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition;
>
> . . .
>
> divided by 60.

§ 707(b)(2)(A)(iii)(I). Two lines of cases have emerged concerning whether a secured debt is "scheduled as contractually due" when a debtor intends to surrender collateral. Compare e.g. In re Skaggs, 349 B.R. 594 (Bankr. E.D. Mo. 2006) (holding that a debtor cannot take a deduction if she does not intend to retain and pay for that collateral because the term "scheduled as contractually due" requires the examination of what the debtor's secured debts were as of the date of the petition, and what secured debts the debtor intended to pay in the future), with In re Walker, 2006 Bankr. Lexis 845, at *9 (Bankr. N.D. Ga. May 1, 2006) (holding that a debt is still "scheduled as contractually due" even if the debtor surrenders the collateral and receives a discharge because "scheduled as contractually due" means "those payments that the debtor will be required to make on certain dates in the future under the contract."). The bankruptcy court held that taken in its proper context, the term "scheduled as contractually due" means "those secured debt obligations incurred by the debtor pre-

5

petition, for which installment payments are scheduled to be due post-petition under the applicable debt instrument." (Mem. Op., BK No. 08-24 at 8). Accordingly, based upon its plain reading of the statute and for the following reasons, the bankruptcy court held that § 707(b)(2)(A)(iii)(I) allows a Chapter 7 debtor to take a secured debt reduction for collateral that the Chapter 7 debtor intends to surrender:

> (1) the word "scheduled" should be given its ordinary dictionary definition, and in the context of § 707(b)(2)(A)(iii)(I), it means those payments that the debtor will be required to make on certain dates in the future under the pre-petition contract; (2) even if collateral is surrendered and the debtor receives a discharge, the underlying secured debt is not extinguished: it is still "contractually due"; (3) § 707(b)(2)(A)(iii)(I) is a snapshot of the debtor's financial circumstances as of the date of the filing of the petition; and no language instructs, much less suggests, that the court can take an anticipated future surrender of the collateral into consideration; and (4) the implementation of a mechanical test for determining secured debts deductions confirms to the intent of Congress to bring uniformity in the application of Chapter 7 abuse testing by the courts, and the mechanical test chosen by Congress implements its goal (however anomalously) of ensuring that debtor who can pay, do pay.

(Mem. Op., BK No. 08-24 at 9-10).

Next, the bankruptcy court considered whether anything in § 1325(b)(3)'s adoption of § 707(b)(2)(A)'s expense deductions require a different result in this case, ultimately finding that § 1325(b)(3) does not alter the language or application of § 707(b)(2). Finally, the bankruptcy court held that the result in the case to allow the debtor to deduct expenses for the contractually due payments on secured collateral at issue is not

absurd, but is rather a consequence of rigid rules specifically chosen to advance objective criteria.

Concerning the Ford truck, the bankruptcy court held that the deduction is proper. Because the ex-boyfriend is making the debtor's contractual payments, however, the bankruptcy court found that the debtor understated her income and that she must include the amount of the Ford truck payments in her calculation of currently monthly income.

This Court has reviewed the record, the parties' briefs, as well as those briefs submitted by the amici curiae, and agrees with the decision of the bankruptcy court. Although the result reached in this case may seem at odds with creditors' rights, plain statutory interpretation yields such a result. Thus, for the reasons set forth in Judge Flatley's detailed and thorough memorandum opinion, this Court must deny the trustee's request to reverse the bankruptcy court's finding that the debtor is entitled to deductions for the two ATVs and the Ford truck and deny confirmation of the debtor's Chapter 13 plan.

## IV. Conclusion

For the reasons set forth above, the bankruptcy court's order and memorandum opinion denying the United States Trustee's objection to confirmation of the debtor's proposed Chapter 13 plan, and sustaining in part and denying in part the trustee's objection to confirmation is AFFIRMED. It is further ORDERED that this

appeal should be and hereby is DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is directed to transmit copies of this order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is directed to enter judgment on this matter.

DATED:    August 27, 2009

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE